THE STATE, JOHN H. CONGER, RELATOR, v. THE BOARD OF
CHOSEN FREEHOLDERS OF MIDDLESEX COUNTY.

1. The boards of freeholders are invested with discretionary power to
   pass upon the sufficiency or insufficiency of a bond presented by a
   county collector.
2. In the absence of proof that such discretion has been abused, the
   court will not by *mandamus* require the acceptance or approval of such
   bond.

On rule to show cause why a *mandamus* should not issue.

Argued at June Term, 1892, before Justices Dixon and
WERTS.

For the rule, *Alan H. Strong.*

*Contra, H. Brewster Willis* and *Robert Adrain.*

The opinion of the court was delivered by

WERTS, J.   The relator alleges that at a meeting of the
board of freeholders of the county of Middlesex, held on the
17th day of May, 1892 (being a continuation by adjournment
of the regular annual meeting of May 11th, 1892), he was
duly elected county collector of that county; that subsequently,
at a meeting of the board, held on or about May 27th, 1892,
he tendered his bond, as such collector, in proper form and
amount, with sufficient sureties, which bond the board refused
to accept.   The relator alleges that such refusal was factious
and without reason, and, thereupon, makes application for a
peremptory writ of *mandamus* commanding the board of free-
holders, "that without delay, it accept the bond heretofore
tendered by the said John H. Conger," &c.

The application for the writ is resisted on three grounds, as
follows:

*First.* Because the relator was never elected county collector
of Middlesex county.

*Second.* Because, if the relator was elected county collector as alleged, he was removed by a reconsideration of the vote by which he claims to be elected before he qualified.

*Third.* Because the relator neglected to furnish a bond satisfactory to the board.

I. Was the relator elected?

The Middlesex board of freeholders is composed of nineteen members. At the meeting on May 17th but eighteen members attended. The preponderence of proof is, that the relator received ten votes, a majority of all the members; that a committee of the board was appointed to wait upon him, inform him of his election and request his attendance before the board; that the committee did so; that he accompanied the committee before the board in session and there, in presence of the eighteen members present, accepted the position, without question as to the legality or regularity of his election.

That at a meeting of the board held May 20th, 1892, his bond, as appears by the minutes, was presented to the board; that it was referred to the counsel of the board "to see if it was properly drawn up;" the counsel reported "it was not; some words had been left out, and he would draw up one if the board wished him to do so; upon motion the bond was referred to the finance committee and counsel to have a proper bond drawn up to present to the board for approval or disapproval."

That at a meeting of the board held May 27th, 1892, the new bond prepared by the counsel of the board (and being the one we are asked to command the board to accept) was presented to the board and read by the clerk; a motion was made that the bond be accepted; an amendment was offered that the bond be referred to the finance committee and counsel to report at next meeting as to the sufficiency of the bondsmen; the amendment was lost by a tie vote of nine and nine; the original motion was then lost by a like tie vote; a motion was then made "that the bond be referred to the finance committee and counsel to have an official search of the surety of said bondsmen of John H. Conger," to which an amendment was offered

" that the bond be accepted at once ;" the amendment was lost by a tie vote of nine to nine, and, the vote recurring on the original motion, that also was lost by a like tie vote.

The next meeting of the board was held June 1st, 1892, at which meeting the alleged removal of the relator took place. The proceedings thus far have been detailed with reference to their bearing upon the question whether the relator was elected. Although some informalities may have attended the proceedings, the court will ascertain and regard what was in fact done. Applying that rule, we conclude that the relator was duly elected. His election was never questioned until the meeting of June 1st, 1892, if it then was.

Being thus elected—

II. Was the relator " removed by a reconsideration of the vote by which he was elected before he qualified ? "

" Before he qualified," we assume to mean " before he presented a bond that was approved by the board." Such is the meaning given to the words in the brief of counsel for respondent.

The removal of the relator is claimed to have been effected at the meeting of the board held June 1st, above referred to, by virtue of two resolutions adopted at that meeting (each by a vote of ten to nine), as follows :

"*Resolved,* All minutes of this board from the organization until the present time be rescinded and disapproved, and that the bond offered by John H. Conger be rejected, as the bond is not a sufficient official bond in the estimation of this board.

"*Resolved,* That the vote whereby John H. Conger was declared elected, May 17th, 1892, be reconsidered."

Both these resolutions impliedly admit the election of the relator ; neither of them declares him removed from office. It is contended that such is their legal effect and consequence. We do not think so. Even if the power of the board arbitrarily to remove the relator should be conceded, we think a formal resolution in terms removing him should have been

adopted. But without passing upon the question whether, under the facts appearing, the board had or have the power of removal, we are of opinion that there was no reconsideration of the vote electing relator whereby his right to the office was affected, and, consequently, that he was not removed.

III. The respondent insists the writ should be denied, because the relator neglected to furnish a bond satisfactory to the board.

The application is to command the board, "that without delay, it accept the bond tendered."

Section 19 of the Freeholders' act (*Rev., p.* 130) provides that the collector shall before he "enters upon the execution of his office give bond, with two sureties, being freeholders and residents in the county, to the said corporation, in such penal sum as they (the board) shall think proper."

Section 20 of the act provides that if the person elected shall neglect to give "*such bond*," it shall be lawful to elect another in his room.

It is undisputed that the relator tendered a bond, signed by himself and two (and more) sureties, freeholders and residents in the county, in the penal sum fixed by the board, viz., $75,000.

It is contended that the bond is not required to be approved by the board; that, in fact, it has not the power to approve or disapprove, and that the relator, having complied with the strict letter of the law with respect to the bond, is entitled to enter upon the execution of his office.

Such a construction would defeat the very object of the act, which is to indemnify the county against the possible default of the collector. The bond might be signed by two or more freeholders, and yet be utterly worthlesss as a security. The fact that the bond is to be made and delivered to the board as a security, in such penal sum as it shall think proper, implies that it is vested with at least a reasonable discretion in passing upon the sufficiency of the bond presented.

It is further contended, that if the board be invested with a discretionary power of approval and disapproval, that it

has abused its discretion, and, therefore, the writ should be allowed.

It is possible a case might be presented of such abuse of discretion on the part of the board as to warrant the granting of a writ of *mandamus*. But we do not think that the action of the board in the present instance presents such a case. From the proofs submitted it may be questioned whether, as a freehold security, the bond presented was adequate to the extent of $75,000, and in that view the desire of the board to investigate as to the sufficiency of the bond and have a search made as to the responsibility of the bondsmen was perfectly justifiable.

In *Benedict* v. *Howell*, 10 *Vroom* 224, Mr. Justice Depue, pronouncing the opinion of this court, said : " The principle which underlies all the cases and governs the courts in the use of the writ of *mandamus* is, that where the thing in issue, on an application for the writ, relates to a matter with respect to which an inferior court or special tribunal is, by law, invested with a discretionary power or with the jurisdiction to decide questions of law or to ascertain matters of fact, the court will not, by proceedings by *mandamus* usurp the power to dictate how the discretion shall be exercised or to decide what conclusions of law or of fact shall be reached."

There being no conclusive evidence before the board of the sufficiency of the sureties and no sufficient proof of an abuse of discretion by the board, the application for the writ of *mandamus* is refused.